**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| ANTONIO TREVELLE LANKO,<br><br>Petitioner,<br><br>vs.<br><br>SUPERINTENDENT OF SCI ALBION, and DISTRICT ATTORNEY OF FAYETTE COUNTY,<br><br>Respondents. | ) | Civil Action No. 2:25-cv-1361<br><br>United States Magistrate Judge Christopher B. Brown |

**MEMORANDUM OPINION GRANTING THE MOTION TO DISMISS, ECF NO. 8**

**Christopher B. Brown, United States Magistrate Judge**[1]

Pending before the Court is the Petition for Writ of Habeas Corpus under 28 U.S.C.§ 2254 ("Petition") filed pro se by Petitioner Antonio Trevelle Lanko ("Lanko"), a state prisoner in the custody of the Pennsylvania Department of Corrections. ECF No. 1. Lanko is challenging the judgment of conviction imposed on him on November 26, 2019, by the Court of Common Pleas of Fayette County at Docket No. CP-26-CR-0000022-2018. *Id.*, ¶¶ 1 and 2.

Respondents move to dismiss the petition arguing Lanko's claims are time-barred under the applicable one-year statute of limitations set forth in the

1 In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment. *See* ECF Nos. 11 and 12.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") codified at 28 U.S.C. § 2254. ECF No. 8. Lanko argues his claims are subject to equitable tolling and/or the miscarriage of justice exception to the statute of limitations. ECF No. 16.[2] The motion is fully briefed and ripe for consideration.

## I. Relevant Background

### A. Underlying Criminal Case

Lanko's criminal charges stem from the death of Tasha Walton on November 3, 2017. Lanko was attempting to remove a bullet from a gun he had retrieved from Ms. Walton's purse when the gun discharged and Ms. Walton was shot in the back. *See Commonwealth v. Lanko*, 242 A.3d 411 (Table), 2020 WL 6690982, at *2 (Pa. Super. Ct. Nov. 13, 2020), *allocator denied*, No. 348 WAL 2020, 666 Pa. 374, 252 A.3d 1071 (table) (Pa. April 20, 2021).[3] After a three-day trial, a jury convicted Lanko of Third-Degree Murder, Receiving Stolen Property, Possession of a Firearm, Firearms Not to be Carried Without a License, and Tampering with Physical Evidence. Lanko was sentenced on September 26, 2019, to "an aggregate term of 31 to 62 years' imprisonment." *Commonwealth v. Lanko*, 309 A.3d 1039 (Table), 2023 WL 7412299, at *1 (Pa. Super. Ct. Nov. 9, 2023).

---

[2] Rather than filing a response to the motion to dismiss, Lanko filed a "Motion for Relief for Judgment Pursuant to Federal Rule of Civil Procedure 60(b)." ECF No. 16. Lanko is under the mistaken belief that the motion to dismiss has been granted and judgment entered. Because Lanko's motion presents arguments pertaining to the timeliness of his petition, the Court will construe his motion as a response to the motion to dismiss.

[3] Respondents indicate that Exhibit A, which is attached to their motion to dismiss, is the Superior Court's decision affirming Lanko's conviction. ECF No. 8 at 3. However, Exhibit A is plainly not the opinion, but rather appellee's brief in opposition to the appeal. *See* ECF No. 8-1.

Through counsel, Lanko filed a timely direct appeal to the Pennsylvania Superior Court, which affirmed his judgment of sentence on November 13, 2020. His petition for allowance of appeal was denied by the Pennsylvania Supreme Court on April 20, 2021. *See Commonwealth v. Lanko*, No. 348 WAL 2020, 252 A.3d 1071 (table) (Pa. April 20, 2021). His judgment became final on July 19, 2021, 90 days after the Pennsylvania Supreme Court denied further review on direct appeal. *See* 42 Pa. C.S.A. § 9545(b)(3) ("judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.")

**2. Post-Conviction Relief Act ("PCRA") Proceedings**

Almost ten months after being sentenced, Lanko filed a pro se PCRA petition on January 5, 2022. ECF No. 8-2 at 25. Counsel was appointed, who then filed a *Turner-Finley*[4] no-merit letter along with a petition to withdraw as counsel on October 7, 2022. *Commonwealth v. Lanko*, 2023 WL 7412299, at *1 (Pa. Super. Ct. Nov. 9, 2023). On November 8, 2022, the PCRA court granted counsel's petition to withdraw and notified Lanko of its intent to dismiss the petition without holding an evidentiary hearing. *Id.* On December 1, 2022, the PCRA court denied relief. *Id.*

---

[4] *See Com. v. Turner*, 544 A.2d 927 (Pa. 1988); *Com. v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).

Lanko filed a timely notice of appeal on December 1, 2022. *Id.* On November 9, 2023, the Superior Court affirmed the dismissal of the PCRA petition. *Id.* at *3.[5] Lanko sought no further review.

### 3. Petition for Federal Habeas Relief / Motion to Dismiss

Lanko initiated this federal habeas action on September 9, 2025, with the filing of the Petition under § 2254, over a year after his PCRA petition had been dismissed by the Superior Court. ECF No. 1. The Petition includes a declaration indicating Lanko placed the Petition in the prison mailing system on August 15, 2025.[6] *Id.*, at 21. Accordingly, the Petition is deemed filed on August 15, 2025. *See Burns v. Morton,* 134 F.3d 109, 113 (3d Cir. 1998) ("we hold that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."). Lanko asserts the following grounds for federal habeas relief:

> GROUND ONE: Direct appeal counsel was ineffective.
>
> > Supporting Facts: The Defendant argues that trial counsel failed to appeal the courts decision which abused it's discretion, by not granting a mistrial when the juror poisoned the jury.
>
> GROUND TWO: Did the trial court err in denying appellant's motion in limine.
>
> > Supporting Facts: The court excluded statements the investigating officers made during

---

[5] In June 2023, the state court docket reflects Lanko filed a pro se petition for return of property, which was denied on September 1, 2023. *See* ECF No. 8-2 at 32. He appealed that decision to the Superior Court which affirmed the decision on December 27, 2023. *See id.* at 34. These events do not affect the timeliness issue before the Court.

[6] Applying the prisoner mailbox rule, Lanko's petition is deemed filed as of August 15, 2025, the day he placed it in the prisoner mailing system.

> > interrogation of Appellant when the recording of the interrogation was played for the jury.
>
> GROUND TWO (duplicate number): Counsel was ineffective.
>
> > Supporting Facts: The Defendant was entitled to have all of his sentences run concurrent, based on the merger doctrine[.]
>
> GROUND THREE: Did the trial court err in denying appellant's motion in limine.
>
> > Supporting Facts: The court excluded statements made by a third party during multiple recorded telephone conversations with Appellant that were played for the jury.
>
> GROUND THREE (duplicate number): Trial counsel failed to appeal the courts decision which abused its discretion by not granting a mistrial when a juror poisoned the jury.
>
> > Supporting Facts: A seated juror commented that the defendant was guilty of homicide and now she can't go to her doctor's appointment.
>
> GROUND FOUR: Was the sentence excessive?
>
> > Supporting Facts: The sentencing court imposed a harsh, severe, and manifestly unreasonable and excessive sentence in light of the circumstances surrounding the alleged incident.

ECF No. 1, at 6-15.

Respondents filed the instant motion arguing the petition is untimely and should be dismissed as Lanko has not alleged any facts to show exceptional circumstances requiring the tolling of the statute of limitations. ECF No. 8.

On February 17, 2026, the Court ordered Lanko to respond to Respondents' motion by April 3, 2026. ECF No. 9. Lanko failed to respond. Due to Lanko's non-compliance, the Court issued an order on April 27, 2026, requiring Lanko to show cause by May 22, 2026, as to why the action should not be dismissed for failure to prosecute. ECF No. 13. The Court cautioned failure to comply with the order would result in the action being dismissed for failure to prosecute.

On May 19, 2026, Lanko moved for an extension of time in which to respond to the motion. ECF No. 14. His motion was granted and he was given an extension to July 6, 2026 to respond. ECF No. 15. On July 10, 2026, Lanko filed a "Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)." ECF No. 16. Lanko's motion is improper as no judgment has been entered in this case. That said, because Lanko addresses the untimeliness of his claims, the Court will construe his filing as a response to the motion to dismiss. In his filing, Lanko concedes the untimeliness of his federal habeas petition and argues his claims are subject to equitable tolling and/or the miscarriage of justice exception applies. ECF No. 16.

## II. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## III. Discussion

### 1. The AEDPA Statute of Limitations

AEDPA established, generally, a strict one-year statute of limitations for the filing of habeas petitions under Section 2254, and provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The United States Court of Appeals for the Third Circuit has held the statute of limitations set out in Section 2244(d)(1) must be applied on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004), *cert.*

*denied sub nom. Fielder v. Lavan*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry.

*First*, the court must determine the "trigger date" for the individual claims raised in the petition under Section 2244(d)(1)(A). Typically, this is the date the petitioner's direct review concluded and the judgment became "final."

*Second*, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute under Section 2244(d)(2). As explained by the Court of Appeals for the Third Circuit,

> a "properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. A Pennsylvania PCRA petitioner, for example, must file a motion with the clerk of the court in which he was convicted and sentenced, Pa. R. Crim. P. 1501, generally within one year of the date the judgment becomes final, 42 Pa. Const. Stat. Ann. § 9545(b)(1). If a petitioner complies with these procedural requirements, or other procedural requires the state imposes, his petition, even a second or successive petition, is a "properly filed application" for purposes of § 2244(d)(2) . . . .

*Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998).

*Third*, the Court must determine whether any of the other statutory exceptions or equitable exception should be applied based on the facts presented. *See, e.g.*, *Munchinski v. Wilson*, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), *aff'd*, 694 F.3d 308 (3d Cir. 2012) (citing *Nara v. Frank*, No 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004), *aff'd*, 488 F.3d 187 (3d Cir. 2007), *as amended* (June 12, 2007)).

All the grounds raised in Lanko's federal petition concern trial-related matters. These claims do not implicate newly enunciated constitutional rights or facts that were discovered later. Nor does it appear there were any state-created events that prevented Lanko from raising these claims sooner. Consequently, the "trigger date" for each of these claims is the date on which Lanko's judgment of sentence became final – July 19, 2021, when the Pennsylvania Supreme Court denied Lanko's petition for allowance of appeal. Pa.R.A.P. 903(a); *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). The AEDPA one-year limitations period for filing a habeas corpus began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Accordingly, Lanko had to file any federal habeas petition concerning these trial-related claims on or about July 19, 2022. Under the prisoner mailbox rule, the instant habeas petition was filed on August 15, 2025. It is, therefore, untimely by more than three years and the claims are statutorily time-barred. Given this deficiency, the Court must determine whether Lanko can take advantage of the statutory tolling provision set out in Section 2244(d)(2) before dismissing his claims as untimely.

**2. Statutory Tolling**

Section 2244(d)(2) provides the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. Lanko filed his pro se PCRA petition on January 5, 2022, at which point 170 days of his one-year limitations period had expired. Those proceedings were "properly filed" and, thus,

tolled the statute of limitations until December 9, 2023, thirty days after the Pennsylvania Superior Court affirmed the dismissal of his PCRA petition. *Swartz*, 204 F.3d at 420-21. At that time, Lanko had 195 days remaining in the limitations period (one year less 170 days). *See generally Lawrence v. Fla.*, 549 U.S. 327, 332 (2007) (explaining tolling under AEDPA). Absent additional tolling, the statute of limitations for Lanko to file a timely federal habeas petition expired on or about June 21, 2024, 195 days after his PCRA proceeding concluded. His federal petition filed on August 15, 2025, missed that mark by over a year.

The Court's analysis does not end there, however, as the Court must also consider whether Lanko's federal habeas petition can be saved by the application of equitable tolling or the United States Supreme Court's recognized fundamental miscarriage of justice exception. *See Holland v. Fla.,* 560 U.S. 631 (2010) (statute of limitations may be equitably tolled with showing of diligence and extraordinary circumstances); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013) (equitable exception to statute of limitations for actual innocence).

**3. Lanko fails to establish entitlement to equitable tolling**

In *Holland*, the United States Supreme Court held the habeas time bar is not jurisdictional but is subject to equitable tolling. *Holland*, 560 U.S. at 649-50. But, AEDPA's one-year limitations period may be equitably tolled only in extraordinary situations. *Id*. The limitations period will be equitably tolled when the principles of equity would make the rigid application of a limitation period unfair. *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006); *Jones v. Morton*, 195 F.3d 153, 159 (3d

Cir. 1999). To receive the benefit of equitable tolling, Lanko must show he (1) pursued his rights diligently *and* (2) extraordinary circumstances prevented him from filing a timely petition. *Holland,* 560 U.S. at 649.

Lanko argues, in a conclusory manner, he is entitled to equitable tolling as "Restricted Housing conditions, Institutional Transfers, and limited access to legal resources impaired his ability to timely file his Habeas petition." ECF No. 16 at 1. This vague, conclusory assertion fails to satisfy the Court that Lanko (1) diligently pursued his rights and (2) an extraordinary circumstance prevented him from filing his federal petition in a timely manner.

First, Lanko fails to allege these circumstances existed during the *entire* relevant period when he could have filed his federal petition. And second, even if Lanko has demonstrated he was diligently pursuing his rights during the relevant period, he has failed to establish that any of these circumstances are "extraordinary" warranting the tolling of the one-year limitation period. "Routine and ordinary events of prison life, such as being transferred between penitentiaries, 'are not the type of extraordinary events that make it impossible to file a timely habeas petition.'" *United States v. Duggan*, No. 5:17-cr-00523, 2025 WL 1618142, at *6 (E.D. Pa. June 5, 2025) (quoting *Harper v. United States*, No. 4:07-CR-00339, 2012 WL 32920, at *5 (M.D. Pa. Jan. 6, 2012) (holding the petitioner was "not entitled to equitable tolling because he was transferred from one penitentiary to another, placed in solitary confinement at various times, and not always able to communicate with other prisoners who possessed legal knowledge" because

"[p]risoners must take such routine restrictions of prison life into consideration when calculating when to file a federal petition.")), *cert. of appealabilty denie*d, No. CV 25-2428, 2025 WL 4353379 (3d Cir. Dec. 15, 2025). And the law is clear that a

> prisoner's limited access to a law library is a routine aspect of prison life, and is generally insufficient to trigger equitable tolling absent a causal relationship between the limited library access and the prisoner's late filing. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (a prisoner must demonstrate a causal relationship between the alleged extraordinary circumstances and his late filing); *Bunting v. Phelps*, 687 F.Supp.2d 444, 448 (D. Del. 2009); *Garrick v. Vaughn*, 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003) (collecting cases) ("Routine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances . . . do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations."). In this case, movant's conclusory and unsubstantiated allegation regarding his limited library access does not demonstrate that the limited access actually prevented him from timely filing the instant § 2255 motion.

*Faines v. United States*, 808 F. Supp. 2d 708, 712 (D. Del. 2011). *See also, e.g.*, *Gadsen v. United States*, Crim. A. No. 09-305, 2015 WL 9259402, at *6 (W.D. Pa. Dec. 18, 2015) ("Petitioner's limited access to the prison's legal research materials, however, does not by itself warrant equitable tolling[.]"); *Patrick v. Phelps*, 764 F. Supp. 2d 669, 673 (D. Del. 2011) ("[L]imited access to the [prison's] law library and legal materials is a routine aspect of prison life [that does not warrant equitable tolling].").

Equitable tolling may generally be appropriate when the petitioner has "been *prevented* from asserting his or her rights." *Severs v. Att'y Gen. of New Jersey*, 793 F. App'x 72, 75 (3d Cir. 2019) (quoting *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.

1999)) (emphasis in original). Lanko has offered nothing to suggest he was *prevented* from bringing his federal petition in a timely manner. Accordingly, the Court concludes Lanko has not shown extraordinary circumstances exist to warrant equitable tolling and allow this Court to consider the merits of his claims.

**4. Lanko fails to meet his burden to demonstrate actual innocence**

Lanko also argues the actual innocence / miscarriage-of-justice exception saves his petition from AEDPA's one-year statute of limitations. *See* ECF No. 16 at 1.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held a miscarriage of justice exception exists to AEDPA's one-year statute of limitations. A claim of actual innocence, if proven, may serve as a gateway, in which a petitioner may pass to the merits of his habeas claim even though the AEDPA statute of limitations period has expired. *Id.* The Supreme Court explained this is an exacting standard: "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

"Proving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Schlup*, 513 U.S. at 324, 327); *see also Wallace v. Mahanoy,* 2 F.4th 133, 151 (3d Cir. 2021). Because actual innocence

provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggan*, 569 U.S. at 399-40.

The Court's first determination is whether Lanko's allegations of constitutional error are supported by "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. If his constitutional allegations are supported by "new and reliable evidence not available at trial," the Court then will proceed to a determination of whether the jury would have convicted Lanko in light of the new evidence. *Id.* And because an actual-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *House v. Bell*, 547 U.S. 518, 538 (2006). "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary case.'" *Id.* (quoting *Schlup*, 513 U.S. at 327). The limited nature of this exception is underscored by the Supreme Court's explicit observation that "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin*, 569 U.S. at 386. Finally, "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Here, Lanko's assertions do not satisfy the *McQuiggin / Schlup* standard for actual innocence. Nothing in his response to the motion to dismiss resembles new, reliable evidence that would support a claim that Lanko is actually and factually innocent.

More specifically, Lanko asserts he is presenting "Newly Recognized Constitutional error demonstrating that the jury was not Impartial . . . Juror Bias constitutes structural error . . . [and] [t]rial counsel's failure to adequately address or remedy the Jurors prejudicial statement constitutes ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984)." ECF No. 16, at 1-2. He also asserts "the combination of Juror Bias and Ineffective Assistance resulted in a fundamental unreliable verdict." *Id.* at 2. Lanko does not claim he is actually innocent, but that a structural error occurred rendering his trial fundamentally unfair. *Id.*, at 2. In support, he attaches an excerpt of the trial transcript reflecting Juror 337, the juror who reported the statement made by another other juror, was questioned by the trial judge and counsel. ECF No. 16-1 at 118. Lanko was present with counsel during the questioning. *Id.*

Lanko raised a similar argument on direct appeal, which the Superior Court rejected on its merits. On direct appeal, Lanko, through counsel, raised four issues, including the following:

> Did the trial court err in denying Appellant's motion for a mistrial when a juror expressed to the other jurors that she believed appellant was guilty prior to the beginning of trial?

*Commonwealth v. Lanko*, No. 1671 WDA 2019, 242 A.3d 411 (Table), 2020 WL 6690982 at *3 (table) (Pa. Super. Ct. 2020) (unpublished memorandum), *appeal denied*, 252 A.3d 1071 (Pa. 2021). In rejecting the claim, the Superior Court explained:

> Here, after the jury was empaneled, but before opening statements were made, Juror #113 expressed her frustration at having to cancel several doctors' appointments by saying aloud in the jury room, "this is great, so he kills someone, and I have to rearrange my whole life." N.T. Trial, 8/5/-7/19, at 150. Juror #337 later reported the comment to the court. After interviewing each of the jurors, the trial court removed Juror #113 and replaced her with an alternate, but denied Appellant's motion for a mistrial.
>
> . . .
>
> The trial court explained its conclusion that no mistrial was warranted as follows:
>
>> Juror #337 approached the tipstaff and law clerk of this Court and informed them of the comments of Juror #113. This information was then related by the staff to the court. Subsequently, each juror was brought out, one at a time, to the witness stand and questioned. Each juror was questioned by the court, the assistant district attorney, and the defense attorney. Jurors were asked whether they heard the statement and whether or not it would have any influence over their respective abilities to sit as jurors and be impartial in weighing the facts presented at trial. Each juror indicated that they either did not hear the statement, or that they heard it and were concerned over the ability of Juror #113 to be impartial. All jurors who heard the statement indicated that it would not influence their deliberations and they could remain fair and impartial.
>>
>> . . .

> Through th[e] court's questioning of each juror regarding the incident, and the indications from the jury panel that these statements would not influence or color their ability to sit as objective jurors in this case, th[e] court denied the request for a mistrial. While the court was initially concerned that the jury panel may have been exposed to extraneous information from Juror #113, it became clear as we questioned each new juror individually that the only information the panel received from this juror was her opinion which was a result of her frustration in being selected. Her opinion in no way related to a central issue in the case, did not provide the jury with any information they did not have before them at trial and was not emotional or inflammatory in nature. The court found the testimony of the individual jurors to be credible and determine[d] that an objective typical juror would not be affected by her comments. The burden of proving whether this extraneous influence was prejudicial is on the moving party and the court finds that Appellant has failed to sustain this burden.
>
> The grounds for a mistrial must be so severe and uncorrectable that a party is denied a fair and impartial trial. This Court determined that the grounds sought for a mistrial were corrected by removing the juror in question and questioning the remaining jurors who all indicated that they could proceed in a fair and impartial manner. As such, we believe that a mistrial would have been an improper remedy[.]

Trial Court Opinion, 1/29/20, at 6-7 (citations and unnecessary capitalization omitted).

From this, it is clear that the trial court followed the applicable law to the letter. Further, its factual determinations are supported by the record. Each juror who actually heard what Juror 113 said understood it as an expression of frustration that she had to cancel specialist medical appointments that had been difficult to

> obtain, not as an indication that she had knowledge of facts or evidence that point to Appellant's guilt. *See* N.T. Trial, 8/5-7/19, at 118-48. Additionally, none of the jurors in the juror room expressed agreement with Juror 113's opinion, and they all stated unequivocally to the court that her statement would not interfere with their abilities to render a fair and impartial decision based upon the evidence and the court' instructions. *Id*. There is no basis for us to conclude that the trial court abused its discretion in concluding that a mistrial was unwarranted because Appellant was not prejudice. Appellant's first issue is meritless.

*Id*. at *3-4.

The Court finds Lanko has presented no "new reliable evidence" of actual innocence sufficient to establish a miscarriage of justice exception to his barred claims. *See Schlup*, 514 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). As such, Lanko does not make an adequate showing of actual innocence to satisfy the requirements of *McQuiggin* and a result he cannot overcome the time-bar based on the actual innocence exception.[7]

## III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Title 28, United States Code, § 2253 provides that "[a] certificate of

[7] To the extent Lanko is arguing trial counsel was ineffective in failing "to adequately address or remedy the Jurors prejudicial statement," such argument lacks merit. The Superior Court's Memorandum reflects trial counsel moved for a mistrial, which the trial court denied. *Lanko*, 2020 WL 6690982 at *3.

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, the Court concludes jurists of reason would not find it debatable that the claims in the petition are time-barred and no tolling or other exceptions apply to save the Petition. Accordingly, a certificate of appealability will be denied.

## IV. Conclusion

For the above reasons, the motion to dismiss will be granted, the petition for a writ of habeas corpus will be dismissed with prejudice as untimely, and a certificate of appealability will be denied with respect to each claim. An appropriate order follows.

DATED this 8th day of September, 2026.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc: ANTONIO TREVELLE LANKO
NH7151
SCI ALBION
10745 ROUTE 18
ALBION, PA 16475-0001
(via U.S. First Class Mail)

Catherine Kiefer
PA Office of Attorney General
(via ECF electronic notification)